**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **NECTARIA TRAIL,**<br>**individually and on behalf of all others**<br>**similarly situated,**<br><br>**Plaintiff,**<br>**v.**<br><br>**YORUZO AUTOMOTIVE TENNESSEE, INC.,**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **NOTICE OF REMOVAL**<br><br><br>**Civil Action No.: ________** |

**NOTICE OF REMOVAL**

Defendant Yorozu Automotive Tennessee, Inc. ("Defendant" or "Yorozu") files this notice of removal of the above-styled case in accordance with 28 U.S.C § 1441, 1446, and 1453 from the Thirty-First Judicial Circuit in the Chancery Court of Warren County, Tennessee (Case No. 17322), to the United States District Court for the Middle District of Tennessee, Nashville Division, and in support of this removal states as follows:

**NATURE OF REMOVED ACTION**

1. On July 9, 2026, Plaintiff Nectaria Trail, on behalf of herself and others similarly situated ("Plaintiff"), filed a Class Action Complaint against Defendant. A true and correct copy of the Class Action Complaint ("Complaint") is attached hereto as **Exhibit A**.

2. This Complaint is currently pending in the Thirty-First Judicial District in the Chancery Court of Warren County, Tennessee.

3. Plaintiff purports to bring a class action against Defendant for its alleged failure to properly store and safeguard sensitive personal identifiable information ("PII" or "Private

Information") about its current and former employees that allegedly was compromised in a recent data breach (the "Breach" or "Data Breach").

4. Plaintiff contends that cybercriminals had "infiltrated" access to Defendant's "insufficiently protected" computer systems that contained a "litany" of highly sensitive Private Information about its current and former employees. (Ex. A ¶ 4). More specifically, Plaintiff contends that on or about December 19, 2025, Defendant determined that, during the period from October 9, 2024, through October 13, 2024, threat actor(s) may have accessed Private Information related to Plaintiff and Class Members. (*Id.* ¶ 8) (internal footnote omitted).

5. Plaintiff alleges that Defendant was impacted by a ransomware attack and, with the assistance of third-party experts, initiated an investigation into the nature and scope of the incident. (*Id.* ¶ 6) (internal footnote omitted). Plaintiff was apprised of the Data Breach through a Notice Letter sent by Defendant (the "Breach Notice"). Plaintiff further alleges that, upon information and belief, the following types of Private Information may have been compromised in the Data Breach: names, addresses, dates of birth, Social Security numbers, driver's license numbers, financial account information, health insurance information, and medical information." (*Id.* ¶ 9). Plaintiff contends that on June 2, 2026, Defendant "disclosed the Breach to the Massachusetts Attorney General and began notifying impacted individuals of the Data Breach." (*Id.* ¶ 10) (internal footnote omitted).

6. Plaintiff alleges that as a result of the Data Breach, "the Private Information of Plaintiff and Class Members has been exposed to criminals for misuse and that the injuries suffered by Plaintiff and Class Members, or likely to be suffered as a direct result of Defendant's Data Breach, include: (a) theft of their Private Information; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from

taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of this Breach; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft resulting from their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damage to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard their Private Information against theft and not allow access to and misuse of their personal data by any unauthorized third party; and (h) the continued risk of their Private Information, which remains in the possession of Defendant, and which is subject to further injurious breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members Private Information." (*Id.* ¶ 82)

7. Plaintiff seeks to certify a class of "[a]ll persons residing in the United States who were impacted by the Data Breach publicly announced by Defendant in June 2026 (the "Class")." (*Id.* ¶ 98)

8. Plaintiff and the Class assert claims against Defendant for gross negligence, negligence *per se*, unjust enrichment, breach of implied contract, and invasion of privacy. (*Id.* ¶¶ 111-188)

## <u>TIMELINESS OF REMOVAL</u>

9. Defendant was served with the Summons and Complaint on July 13, 2026. (*See* Declaration of Phillip Williams ¶ 3), attached hereto as **Exhibit B**. As such, this removal is timely because Defendant filed this removal within 30 days of being served with the Complaint. *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service of complaint); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 532 (6th Cir. 1999) (stating notice of removal

of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter….”); *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 348 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, "through service or otherwise," after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service.").

## PROPRIETY OF VENUE

10. This Court is in the judicial district and division embracing the place where the state court case was brought and is pending. Thus, this Court is the proper district court to which this case should be removed. 28 U.S.C. §§ 1441(a), 1446(a).

## GROUNDS FOR REMOVAL

11. This is a civil action over which the Court has original subject matter jurisdiction under 28 U.S.C. §§ 1332 and 1441. Removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

12. **Basis of Original Jurisdiction**. This Court has original jurisdiction over this action under CAFA, codified at 28 U.S.C. § 1332(d). Congress enacted CAFA "to facilitate adjudication of certain class actions in federal court." *Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 287 (6th Cir. 2016) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)).

13. Unlike invocations of traditional diversity jurisdiction, there is no presumption against removal where CAFA is the asserted basis. *Adams v. Adient United States LLC*, 2021 U.S. Dist. LEXIS 252083, at *28 (W.D. Tenn. Sep. 30, 2021); see *also Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 89. The removing party's burden is to prove, by a preponderance of the evidence, that the jurisdictional facts it alleges are true. *Gafford v. General Electric Co.*, 997 F.2d 150, 158 (6th Cir. 1993).

14. CAFA affords federal district courts original jurisdiction over a class action if the "matter in controversy exceeds the sum or value of $5,000,000," 28 U.S.C. § 1332(d)(2), the parties are minimally diverse, *id*. § 1332(d)(2)(A), and the class contains 100 or more members, *id*. § 1332(d)(5)(B); *see also Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013).

15. As set forth below, under 28 U.S.C. § 1332(d) and § 1441(a), Yorozu may remove the Chancery Court action to federal court under CAFA because: (1) this action is pled as a nationwide class action; (2) the putative class includes more than 100 members; (3) "minimal diversity" exists, *i.e.*, members of the putative class are citizens of a state different than that of the Defendant; and (4) the matter in controversy, in the aggregate, exceeds the sum or value of $5 million, exclusive of interests and costs.

16. **This Action Is Pled as a Class Action.** CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rule of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1).

17. Plaintiff brings a class action and seeks class certification under Tennessee pursuant to Tennessee R. Civ. P. 23.01(1)-(4). (Ex. A ¶ 101). Tenn. R. Civ. P. 23.01 provides that a class action may be brought by a representative party on behalf of all members of the class only if: (1)

the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical to the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class. *Meighan v. U.S. Spirit Communs. Co*., 924 S.W.2d 632, n.1 (Tenn. 1996).

18. **The Putative Class Includes At Least 100 Members**. Plaintiff purports to bring a class action on behalf of "[a]ll persons residing in the United States who were impacted by the Data Breach publicly announced by Defendant in June 2026." (Ex. A ¶ 98). Plaintiff estimates, upon information and belief, that the Class is comprised of "thousands of Class Members, if not more." (*Id.* ¶ 102). Thus, the number of putative class members exceeds the statutorily required minimum of 100 individuals required under CAFA.

19. **"Minimal Diversity" of Citizenship Exists**. Under 28 U.S.C. § 1332(d)(2)(A), "the district court shall have original jurisdiction" over a "class in which . . . any member of the class of plaintiffs is a citizen of a State different from any defendant."

20. **Defendants' Citizenship**. Yorozu is an "automotive manufacturing company that manufactures suspension modules and other automotive components." (Ex. A ¶ 21) (internal footnote omitted). Yorozu maintains two plants – one in Tennessee and one in Alabama. (*See* Williams Decl. ¶ 4). Its North American headquarters is in Tennessee. Its ultimate parent company resides in the country of Japan.

21. **Plaintiffs' Citizenship.** The Named Plaintiff is a citizen of Tennessee. (Ex. A, ¶ 20). However, the putative class Plaintiff seeks to represent are broad and expansive geographically. Although many class members are Alabama residents, Yorozu maintains offices in Alabama and Tennessee borders, and as such, a significant portion of individuals reside in those

states as well as other Southern states. Indeed, Plaintiffs' proposed class encompasses "[a]ll persons residing in the United States who were impacted by the Data Breach publicly announced by Defendant in June 2026." (*Id.* ¶ 98). The proposed class, therefore, is not limited by geography, and thus the Complaint seeks certification of a nationwide class. Notably, Defendant is an automotive manufacturing company that manufactures suspension modules and other automotive components. (*Id.* ¶ 21) (internal footnote omitted).

22. **The Amount in Controversy Exceeds the CAFA Threshold**. CAFA requires that a complaint put in controversy more than $5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). The claims of the individual class members are aggregated for purposes of CAFA's amount-in-controversy requirement. *See id*. § 1332(d)(6). [I]t is generally agreed in [the Sixth C]ircuit, that the amount in controversy should be determined 'from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect.'" *Smith v. Nationwide Prop. & Cas. Ins. Co*., 505 F.3d 401, 407 (6th Cir. 2007) (internal citations omitted). The defendant can remove "the matter to federal court upon a demonstration that damages are "more likely than not" to "meet the amount in controversy requirement[.]" *Id.* (citing *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 375 (6th Cir. 2007) (quoting *Rogers v. Wal-Mart Stores, Inc*., 230 F.3d 868, 871 (6th Cir. 2000)). In removing under CAFA, the defendant "has the burden of demonstrating, by a preponderance of the evidence, that the amount in controversy requirement has been met." *Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 282 (6th Cir. 2016) (citing *Smith*, 505 F.3d at 404) (internal quotation marks omitted).

23. Where, as here, Plaintiff's Complaint "does not specify the amount of damages they seek to recover, the burden rests with the Defendant[] to produce other evidence establishing that the amount-in-controversy requirement has been satisfied." *Brown v. Paduch & Louisville Ry.*,

*Inc.*, 2013 U.S. Dist. LEXIS 132608, at *9 (W.D. Ky. Sep. 16, 2013); *see also Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993) (holding that where plaintiff's complaint seeks recovery of an unspecified amount of damages, the burden is on defendant to prove the threshold jurisdictional amount by a preponderance of the evidence).

24. Plaintiff and the Class assert claims against Defendant for gross negligence, negligence *per se*, unjust enrichment, breach of implied contract, and invasion of privacy. (Ex. A ¶¶ 111-188). More specifically, the Complaint alleges the "actual and adverse effects to Plaintiff and Class Members, including the imminent, immediate, and continuing increased risk of harm for identity theft and identity fraud directly or proximately caused by Defendant's wrongful actions and/or inaction and the resulting Data Breach require Plaintiff and Class Members to take affirmative acts to recover their peace of mind and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts, for which there is financial and temporal cost. [According to Plaintiff, she] and other Class Members have suffered, and will continue to suffer, such damages for the foreseeable future." (*Id.* ¶ 85). In another class action brought against Yorozu which advances very similar factual allegations and the same causes of action, the named plaintiff pled that the retail cost of credit monitoring and identity theft monitoring can cost $200 or more per year per Class Member. (*See* Williams Decl. ¶ 5). What is more, the Breach Notice provided by Defendant was sent to employees dating back to 1988, which Defendant believes consists of approximately 20,627 current and former employees that may have had their information impacted by the Data Breach.

(*See* Williams Decl. ¶ 6). By example, if 20,627 Class Members obtained $200 for one year of credit monitoring, that amount would equal $4,125,400 million.

25. Plaintiff goes on to say that she, together with the Class Members, "face a substantial risk of identity theft given that their Private Information was compromised in the Data Breach" because "[s]tolen Private Information is often trafficked on the "dark web," which is "a heavily encrypted part of the Internet that is not accessible via traditional search engines" and that "[l]aw enforcement has difficulty policing the "dark web" due to this encryption, which allows users and criminals to conceal their identities and online activity." (Ex. A ¶¶ 75-76). As such, there is likely an expectation to provide credit monitoring beyond just one year. If so, the cost of credit monitoring alone, over several years for several thousand individuals, could be in the many millions of dollars, even before accounting for the additional damages asserted.

26. In data incident cases involving similar allegations and where the amount in controversy is not apparent from the face of the complaint, courts routinely hold that the costs of providing credit monitoring and identity theft protection services are properly included in the amount in controversy for purposes of CAFA's jurisdictional requirements. *See, e.g., Porras v. Sprouts Farmers Mkt.,* LLC, No. EDCV 16-1005 JGB (KKX), 2016 U.S. Dist. LEXIS 96805, at *1 (C.D. Cal. July 25, 2016) (denying motion to remand on the grounds that years of credit monitoring for thousands of class members was included in the amount in controversy and therefore exceeded the $5 million threshold); *McLoughlin v. People's United Bank, Inc.,* 586 F. Supp. 2d 70, 73 (D. Conn. 2008) (same); *Fielder v. Penn Station, Inc., No.* 1:12- cv-2166, 2013 WL 1869618, at *5-7 (N.D. Ohio May 3, 2013) (same); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 276-78 (S.D.N.Y. 2008) (same).

27. Plaintiff further asserts "[a]s a result of the Data Breach, the Private Information of Plaintiff and Class Members has been exposed to criminals for misuse. The injuries suffered by Plaintiff and Class Members, or likely to be suffered as a direct result of Defendant's Data Breach, include: (a) theft of their Private Information; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of this Breach; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft resulting from their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damage to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard their Private Information against theft and not allow access to and misuse of their personal data by any unauthorized third party; and (h) the continued risk to their Private Information, which remains in the possession of Defendant, and which is subject to further injurious breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information." (*Id.* ¶ 82). According to Plaintiff, "PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200. Criminals can also purchase access to entire company data breaches for $900 to $4,500." (*Id.* ¶ 79) (internal footnotes omitted). If Plaintiff and Class Members succeed in proving losses consistent with those claimed damages and figures, the total damages would significantly increase.

28. On top of these damages, Plaintiff and the Class also seek an award of "statutory damages or penalties" among other forms of relief. (*Id*. at p. 37).

29. Based on Plaintiff's claims, Defendant can prove that the CAFA amount in controversy has been met. *See Evans v. AMISUB (SFH), Inc*., 2017 U.S. Dist. LEXIS 227813, at *4 (W.D. Tenn. Dec. 8, 2017) (finding "[o]nce the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction.") (citing *Brill v. Countrywide Home Loans, Inc*., 427 F.3d 446, 448 (7th Cir. 2005)).

30. Thus, because the case was pled as a class action, and because minimal diversity, class size, and the amount in controversy requirements of CAFA are satisfied, Yorozu has properly removed the Chancery Court action to this Court.

**EXCEPTIONS TO CAFA JURISDICTION DO NOT APPLY**

31. **The Local-Controversy or Home-State Exception to CAFA Jurisdiction Do Not Apply.** The local-controversy and home-state exception under CAFA do not apply. *See* 28 U.S.C. § 1332(d)(4).

32. It is well-settled that the exceptions to CAFA are just that – exceptions. It is Plaintiffs' burden to establish that one of those exception's applies, not Defendant's burden to disprove their applicability. CAFA "establishes certain exceptions to the exercise of jurisdiction under the statute, spelling out the circumstances under which the district court may or must decline to exercise jurisdiction. *See* 28 U.S.C. § 1332(d)(3)-(5). Every circuit that has considered the issue has concluded that while the removing defendant bears the burden of showing that CAFA's general jurisdictional requirements are satisfied, the plaintiff has the burden of showing the applicability of one of the exceptions." *Bartels v. Saber Healthcare Grp.*, LLC, 880 F.3d 668, 681 (4th Cir. 2017) (citing *Evans v. Walter Indus., Inc.,* 449 F.3d 1159, 1164 (11th Cir. 2006); *Brinkley v.*

*Monterey Fin. Servs., Inc.*, 873 F.3d 1118, 1121 (9th Cir. 2017); *Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 389 (6th Cir. 2016); *Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1262 (10th Cir. 2014); *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 564 F.3d 75, 78 (1st Cir. 2009); *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 153 (3d Cir. 2009); *Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675, 676 (7th Cir. 2006); *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 546 (5th Cir. 2006)).

33. The "local controversy exception" allows a district court to decline jurisdiction if: (1) more than two-thirds of the proposed class members are citizens of the state in which the action was filed; (2) at least one defendant from whom significant relief is sought and whose conduct forms a significant basis for the claim is a citizen of the state; (3) the principal injuries resulting from the conduct occurred in the state; and (4) no other similar class action was filed against any defendant within the last three years. *Owens v. Crestwyn Health Grp., LLC,* 2025 U.S. Dist. LEXIS 162693, at *3-4 (W.D. Tenn. Aug. 21, 2025) (citing 28 U.S.C. § 1332(d)(4)(A)).

34. Notably, "[t]he local controversy exception will apply only if no other similar class action was brought against any of the defendants in the instant action during the three years preceding the filing of this case." *Davenport v. Lockwood, Andrews & Newman, Inc.*, 854 F.3d 905, 909 (6th Cir. 2017) (citing 28 U.S.C. § 1332(d)(4)(A)(ii)). It cannot be seriously disputed that another class action was brought against Yorozu, which advances very similar factual allegations and the same causes of action. (*See* Williams Decl. ¶ 5). Applying the language of the exception to the facts of the instant matter, the local controversy exception cannot apply. The statutory language is clear and ambiguous and confirms that the federal court retains jurisdiction over this matter under CAFA.

35. Likewise, the "home state exception" allows a district court to decline jurisdiction if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." *Owens*, 2025 U.S. Dist. LEXIS 162693, at *4 (citing 28 U.S.C. § 1332(d)(4)(B)).

36. State citizenship equals domicile. *Id*. (citing *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990)). A class member is domiciled where they reside and intend to remain; however, there is a rebuttable presumption that each class member intends to remain where they currently reside. *Id*. (citing *Mason*, 842 F.3d at 390). The Sixth Circuit has established that "residence creates a rebuttable presumption of domicile for CAFA exception purposes." *Id*. at 7 (citing *Mason*, 842 F.3d at 390). Courts are permitted to make "reasonable assumptions" about class citizenship without requiring "exact counts." *Id*. at 9 (internal citations omitted).

37. In this case, the Breach Notice of the Data Breach was sent to approximately 20,627 current and former employees, *dating back to 1988 – i.e.*, a period of approximately thirty-eight (38) years. (*See* Williams Dec. ¶ 6). Approximately 19,000 of the individuals sent the Breach Notice are *former* employees of Yorozu. (*Id.* ¶ 7). As such, the reality is that (i) these former employees may not have received the Breach Notice and/or (ii) may not reside at the last known address where the Breach Notice was sent to, particularly given the fact that the Breach Notice was sent to approximately 38 years' worth of current and former employees. (*Id.* ¶ 8). For former employees who have not worked for Yorozu for ten, twenty or thirty years, many of those individuals have likely moved to different states altogether outside of Tennessee or Alabama. Upon information and belief, a significant portion of the individuals potentially reside outside of Tennessee. (*Id.* ¶ 9). Based on the foregoing, as well as the fact that the Complaint does not plead the domiciliary of those current and former employees that were sent the Breach Notice of the

Data Breach, Plaintiff has not met the burden of showing that either of the above-referenced exceptions apply.

38. **The Interests of Justice Exception Does Not Apply**. This exception, codified under 28 U.S.C. § 1332(d)(3), provides a district court with the discretion to decline jurisdiction where (1) "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate" and (2) "the primary defendants are citizens of the State in which the action was originally filed" based on the consideration of other factors which include (a) whether the claims asserted involve matters of national or interstate interest…

39. Here, as previously noted, the individuals impacted arguably reside across the country, making this a matter of national interest rather than a localized controversy. Accordingly, the discretionary exception should not apply.

40. In sum, none of the CAFA exceptions apply and the Court should retain jurisdiction over the case.

**NOTICE**

41. As required by 28 U.S.C. § 1446(d), Yorozu is providing written notice of the filing of this Notice of Removal to Plaintiff and is filing a copy of this Notice of Removal with the Clerk of Court for the Thirty-First Judicial District in the Chancery Court of Warren County, Tennessee.

WHEREFORE, Yorozu removes this case in accordance with 28 U.S.C § 1441, 1446, and 1453 from the Thirty-First Judicial District in the Chancery Court of Warren County, Tennessee, to the United States District Court for the Middle District of Tennessee, Nashville Division.

Respectfully submitted this 7th day of August 2026.

*/s/ Jonathan O. Harris*

Jonathan O. Harris, Esq., TN Bar No. 21508
John R. Adams, Esq., TN Bar No. 39284
JACKSON LEWIS, P.C.
CitySpace
611Commerce Street, Suite 2803
Nashville, TN 37203
Telephone: (615) 565-1661
Facsimile: (615) 206-2244
Email: john.adams@jacksonlewis.com
jonathan.harris@jacksonlewis.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 7th day of August, 2026, a true and correct copy of the foregoing *Defendant's Notice of Removal* was served via electronic mail upon the following counsel of record:

J. Gerard Stranch, IV
Grayson Wells
Sam Douthit
Stranch, Jennings & Garvey, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
gstranch@stranchlaw.com
gwells@stranchlaw.com
sdouthit@stranchlaw.com

Tyler A. Litke
Melissa G. Meyer
Levi & Korsinsky, LLP
33 Whitehall Street, 27th Floor
New York, NY 10004
tlitke@zlk.com
mmeyer@zlk.com

*Attorneys for Plaintiff*

*/s/ Jonathan O. Harris*
Jonathan O. Harris
*Attorneys for Defendant*

4898-9901-0753, v. 2